IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Carol A. Dillbeck,
        Plaintiff,

        v.                          Case No. 2:03-cv-0689
                                     JUDGE GRAHAM
Huntington National Bank,
        Defendant.


## MEMORANDUM OPINION AND ORDER

In this employment discrimination action, a hearing impaired plaintiff, Carol Dillbeck ("plaintiff"), alleges that Huntington National Bank ("defendant") violated the Americans with Disabilities Act ("ADA") by failing to make reasonable accommodations (Count 1); violated ORC §4112.02(A) by terminating the plaintiff's employment without making reasonable accommodations (Count 2); violated Ohio public policy by terminating plaintiff's employment without making reasonable accommodations (Count 3); and wrongfully terminated the plaintiff's employment (Count 4). This matter is before the court on defendant's motion for summary judgment.


## I.  Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. LaPointe, 8 F.3d at 378. The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The Court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8

2

F.3d 343, 346 (6th Cir. 1993)(quoting <u>Anderson</u>, 477 U.S. at 251-52).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original); <u>see generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. <u>See also</u> <u>Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. <u>Adams v. Metiva</u>, 31 F.3d 375, 379 (6th Cir. 1994).


## II.  Background

In evaluating defendant's summary judgment motion, this court accepts the facts in a light most favorable to plaintiff's claim. Plaintiff is deaf and her primary means of communication is by American Sign Language ("ASL").  She was hired by defendant as an at-will employee in September, 1996, to work in the bank's lockbox division.  When plaintiff was hired, she informed defendant that in addition to being deaf, she did not completely understand written

3

English.

Plaintiff worked in the lockbox division processing information from checks and invoices into customer accounts. Each customer had a lockbox that corresponded to that business's chosen method for handling checks. To perform her work, plaintiff had to read the checks and other client specific information, verify the names, enter the data, and then process the check. Defendant enforced minimum performance criteria for employees that worked in the lockbox division. Performance was measured both by speed and accuracy. Employees that did not meet the minimum criteria were given verbal and written warnings. If performance did not improve, they were placed on probation and then ultimately terminated.

Plaintiff's employment began with six weeks of training. An ASL interpreter was present for that training. During her first year of employment, plaintiff failed to meet the minimum performance criteria, so in November, 1997, an interpreter was brought in to provide further training. Plaintiff's performance temporarily improved.

Plaintiff had three different supervisors during the course of her employment. The first two did not have any formal training in ASL. Her last supervisor took an ASL class and could communicate "some" with the plaintiff, but was not fluent. Plaintiff primarily communicated with her supervisors and co-workers by writing and receiving written notes.

Plaintiff alleges that on several different occasions she requested the assistance of an interpreter. These requests were

4

made both verbally and in writing.  Plaintiff alleges that most of these requests were ignored.  Further, defendant held regular department meetings where general issues were discussed.  No interpreter was provided at these meetings and plaintiff had to rely on written notes.  Similarly, a company-wide meeting with the President of the Bank was held at the Aladdin Shrine Temple and plaintiff alleges that an interpreter was not provided.  However, an interpreter was provided during plaintiff's six-week training program; in November, 1997, for additional training; during a meeting in September, 2000, where plaintiff's job performance was discussed; and at her termination.

During plaintiff's deposition, she was questioned with respect to training:

> Q:  So you received adequate training in your position?
>
> A:  Yeah, I did.  I felt like it was adequate. But then the lockbox things changed when I was supposed to work in the lockbox department. So the initial training, yes, was satisfactory.  But the problem is that I wasn't initially trained in lockbox.  And that came up later.  And that is something I didn't feel I was adequately trained for.
>
> Q:  So it sounds like she moved departments while she worked at Huntington.
>
> A:  No. I always worked in lockbox.  I was never transferred or anything like that.
>
> ....

5

> Q: How were your job duties different than what you were trained on?
>
> A: The names of the companies were different. The lockbox has different numbers and different companies. The checks are different. So I wasn't trained in that. It's not - - they're not all the same. There's not one standardized way of doing it. There are a variety of ways. For example the zip code with the lockbox and the training was the same. But there were things that were new. The names were different. The zip would be the same, but some of the papers were the same. [sic] But I wasn't able to understand the written English much of the time, which was another problem.
>
> Q: So I understand that the names of the businesses were different. But the way you processed the checks was the same. True?
>
> A: Yes, that's right.

See Dillbeck Dep. at 40-42

Plaintiff also admitted that her errors were not caused by her hearing problems.

> Q: Are you claiming that your deafness caused you to commit these errors?
>
> A: It is not because of my deafness, there are other reasons for the mistakes.

See id. at 182.

Plaintiff was placed on probation because of her inability to meet speed and accuracy requirements. On February 2, 2001, plaintiff was terminated. Over the course of plaintiff's employment, she was counseled thirty nine times regarding her

6

inability to meet the minimum performance criteria. Twenty of the documented counseling sessions took place during her last twelve months of employment.


### III. Discussion

Defendant moves for summary judgment on all of plaintiff's claims. With respect to the ADA and ORC §4112 claim, summary judgment is granted because plaintiff cannot prove she was a qualified employee. The Ohio public policy claim fails because adequate statutory remedies are provided in the ADA and Ohio law. Finally, summary judgment is granted on the wrongful termination claim because plaintiff was an at-will employee.

### A. Count I (the ADA Claim)

Plaintiff alleges that defendant failed to make reasonable accommodations in violation of the ADA (42 USC §12112(A)). Specifically, plaintiff alleges that defendant failed to provide adequate training to plaintiff, failed to provide plaintiff's supervisors with ASL training, and failed to provide ASL interpreters for the plaintiff.

To establish a failure to accommodate claim under the ADA, plaintiff must prove: 1) that she is disabled; 2) that she is otherwise qualified to perform the work; and 3) that she was denied reasonable accommodations. Roush v, Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996). It is undisputed that plaintiff satisfies the first element. Defendant seeks summary judgment claiming that the

plaintiff has failed to prove the remaining two elements.

### 1.    A Qualified Individual

To prove the second element, that plaintiff is a qualified individual under the ADA, plaintiff must show that she can perform the essential functions of her job with or without reasonable accommodations and that she has the requisite skill, education, experience and training for the position. 42 USC §12111(8); 29 CFR §1630.2(m). Plaintiff is unable to prove either of these requirements.

A job function is essential when it involves the position's fundamental duties or when the reason the position exists is to perform that function. 29 CFR §1630.2(n). Employees must be able to perform essential functions unaided or with the assistance of reasonable accommodations. 29 CFR §1630.2(m). Factors in determining what functions are essential include: 1) an employers judgment; 2) written job descriptions; 3) amount of time on the job devoted to performing that function; 4) consequences of not requiring the employee to perform the function; 5) terms in a relevant labor agreement; 6) work expereiences of those that have held the position; and 7) the current work experiences of those holding the position. See 29 CFR §1630.2(n)

It is undisputed that the essential functions of plaintiff's position included reading and processing checks and other financial information quickly and accurately. Further, it is undisputed that plaintiff does not completely understand written English and that she failed to meet the speed and accuracy

8

requirements as evidenced by the numerous counseling sessions and written warning provided to plaintiff.

Defendant argues that plaintiff's inability to meet these expectations demonstrates plaintiff is not a qualified individual. Plaintiff, on the other hand, claims that defendant's minimum criteria are self-serving, non-objective standards and that plaintiff's inability to meet the criteria resulted from defendant's failure to provide ongoing training and refusal to provide an interpreter.

Plaintiff's position fails to create a genuine issue of material fact. Plaintiff failed to cite, and this court failed to uncover, any evidence to support the assertion that defendant's minimum criteria is in any way "non-objective." Plaintiff also admits that her deafness did not cause her unsatisfactory performance. She testified that "other reasons," not her inability to hear, caused her to commit the errors. At several points in the record, plaintiff attributes her unsatisfactory performance to the fact that she cannot read and/or understand written English. Dillbeck Dep. at 41-42, 182, 199; Dillbeck Response Memorandum at 4; Dillbeck Affidavit ¶5. Lastly, plaintiff admits that she was adequately trained for her position but still struggled because she could not read the names of the companies and other client specific information provided to her in writing.

In addition to not being able to perform the essential functions of the position, plaintiff also fails the second part of the qualified individual test because she lacks the requisite

skill, education, and experience for the position. Plaintiff admits that she is unable to understand written English, which hindered her performance. Moreover, plaintiff fails to refute defendant's evidence showing that she lacked the speed, accuracy, and other requisite skills necessary to meet defendant's minimum criteria.

In reaching this decision, this court accepts as true plaintiff's factual allegation that on numerous occasions plaintiff requested an ASL interpreter and defendant failed to provide one. Nevertheless, plaintiff has failed to show any connection between defendant's alleged failures to accommodate and plaintiff's unsatisfactory performance. Plaintiff specifically alleges that defendant failed to provide an interpreter at individual trainings, regular department meetings, and a company-wide function. Plaintiff, however, presents no evidence demonstrating that the absence of an interpreter, on any of these occasions, prevented plaintiff from meeting minimum job performance criteria.

In contrast, the plaintiff's own admissions prove otherwise. Plaintiff admits that her deafness did not contribute to her errors, that she can not read written English, and that she could not read the business names and other client specific information that was necessary to perform the work that she was trained - with an interpreter - to do. In light of these admissions, plaintiff cannot perform the essential functions of her position and does not have the skills to meet the legitimate job expectations of her employer. Plaintiff's claim fails because she cannot produce

10

evidence showing that, apart from her disability, she can perform at the minimum standards necessary for the position. <u>Brickers v. Cleveland Board of Education</u>, 145 F.3d 846, 850 (6th Cir. 1998); <u>Matthews v. Commonwealth Edison Company</u>, 128 F.3d 1194, 1195-1196 (7th Cir. 1997)

The inability to read written English is not a disability entitling one to protection under the ADA. 29 CFR Pt. 1630, App. §1630.2(j)["an individual who is unable to read because he or she was never taught to read would not be an individual with a disability because lack of education is not an impairment"]. Moreover, under the ADA, defendant is not required to provide an employee to perform plaintiff's essential job duties for them. 29 CFR Pt. 1630, App. §1630.2(o); <u>Burns v. Coca-Cola Enterprises, Inc.</u>, 222 F.3d 247, 257 (6th Cir 2000). Specifically, defendant is not required to provide an interpreter to read the business information and client specific names to the plaintiff.

### 2.    Reasonable Accommodations

Defendant, in their motion for summary judgment, also seeks dismissal claiming that plaintiff has failed to prove the third element of her claim; that plaintiff was denied reasonable accommodations.  It is not necessary for this court to address whether defendant's alleged failure to provide interpreters constitutes a denial of reasonable accommodations under the ADA. Summary judgment is granted with respect to Count 1 because plaintiff cannot satisfy the second element of her claim, that she is an otherwise qualified individual.  Thus, defendant had no legal

obligation to provide reasonable accommodations.  29 CFR Pt. 1630, App. §1630.9

### B.    Count II (ORC §4112 Claim)

Plaintiff alleges that defendant violated ORC §4112.02(A) by terminating the plaintiff without providing reasonable accommodations.  In evaluating this claim brought under Ohio law, federal ADA standards will apply because the Ohio Supreme court has urged Ohio courts to look to the ADA for guidance in interpreting Ohio's prohibition on disability discrimination. City of Columbus Civil Service. Comm'n v. McGlone, 82 Ohio St. 3d 569, 573 (1998). Moreover, both the ADA and Ohio law employ identical language in requiring that a plaintiff be able to perform the "essential functions" of the job with or without reasonable accommodations. See 29 CFR §1630.2(m); City of Columbus Civil Service, 82 Ohio St. 3d at 573.  Further, the plaintiff, in response to defendant's summary judgment motion, relies on federal law to support her claims.

Under the ADA, the plaintiff must show the following to establish a *prima facie* case of improper termination under Ohio law: 1) that she is disabled; 2)that she is otherwise qualified for the position; 3)that she suffered an adverse employment decision; 4) that the employer knew or had reason to know of the disability; and 5) the position remained open.  Monette v. Elec. Data Sys. Corp., 90 F. 3d 1173, 1185 (6th Cir. 1996).

Once a *prima facie* case is established, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason

for the action. Id. If the defendant provides a legitimate business reason, the plaintiff must then show, by a preponderance of the evidence that the employer's reasoning is pretextual. Id. To show pretext, a plaintiff must show that the defendant's reason was false and that discrimination was the real reason for the employment decision. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Plaintiff fails to establish a *prima facie* case because plaintiff cannot prove the second element, that she was otherwise qualified for the position. As discussed above in section III(A), the plaintiff could not perform the essential functions and lacked the necessary education and skills for her position. Therefore, plaintiff is not a qualified employee as defined by the ADA.

Even if a *prima facie* case could be established, plaintiff failed to present evidence that she was terminated for anything but the legitimate business reason of her inability to meet minimum performance criteria. Further, plaintiff admits that she does not believe she was fired because of her disability. In her deposition plaintiff states, "I wanted to know why they let me go. I don't think it was because I was deaf." See Dillbeck Dep. at 196. As a result, plaintiff cannot establish that the stated reasoning for her termination is false and is a pretext for discrimination.

C. **Count III (Ohio Public Policy Claim)**

In Count III, plaintiff claims that defendant's termination without providing reasonable accommodations violated Ohio's public policy. Under Ohio law, the necessary elements of a wrongful

13

discharge claim include: 1) existence of a clear public policy; 2) dismissal under circumstance that jeopardizes the public policy; 3) dismissal motivated by conduct related to the public policy; and 4) lack of an employer's overriding legitimate business justification. <u>Wiles v. Medina Auto Parts</u>, 96 Ohio St. 3d 240, 242 (2002).

In evaluating the second element, commonly referred to as the jeopardy element, courts are instructed:

> "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy."... Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. (citations omitted)

<u>See</u> <u>id</u>. at 244.

The statutory remedies that exist under the ADA and ORC §4112 are adequate to protect society's interest in discouraging employers from engaging in discrimination and further provide sufficient compensation to the victims of such discrimination. The Ohio Supreme Court has found that remedies provided under the Family and Medical Leave Act ("FMLA"), namely compensatory and liquidated damages, are broad enough to compensate an aggrieved employee, thus vacating the need to create by judicial fiat further remedies by way of a common-law tort claim. <u>Wiles</u>, 96 Ohio St. 3d at 248.  Remedies available under the ADA extend beyond what was deemed adequate in <u>Wiles</u> and include compensatory damages, punitive damages, injunctive relief and attorney's fees. 42 USC §1981(a)(2).  Likewise, Ohio courts have dismissed tort

14

actions premised on the public policy contained in ORC §4112 because it provides adequate remedies.  See Lewis v. Fairview Hosp., 156 Ohio App. 3d 387, 392(2004).

Plaintiff's public policy claim also fails because the underlying statutory discrimination claims fail.  As discussed above, plaintiff cannot succeed on either statutory claim.  Therefore, any claim based on the policy contained in those statutes also fails.  Weller v. Titanium Metal Corp., 361 F.Supp.2d 712, 724 (S.D. Ohio 2005).  For these two reasons, defendant's motion for summary judgment with respect to Count III of plaintiff's complaint is granted.

**D.   Count IV (Wrongful Termination Claim)**

Finally, plaintiff's complaint alleges she was "wrongfully terminated" from her employment.  Defendant argues that summary judgment is appropriate because, under Ohio law, employment for an indefinite period of time is presumed to be at-will and thus may be ended at any time for any reason.  Plaintiff does not challenge defendant's assertion.

It is undisputed that plaintiff was an at-will employee.  Her employment could be terminated any time for any reason not prohibited by law.  Mers v.Dispatch Printing Co., 19 Ohio St.3d 100, 103 (1985).  No evidence was presented showing that plaintiff was terminated for an invalid or unlawful reason.  Therefore, summary judgment with respect to Count IV of plaintiff's complaint is granted.

### IV.  Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted.  The clerk shall enter final judgment in favor of defendant on all of plaintiff's claims, dismissing plaintiff's complaint with prejudice.  Costs shall be taxed against plaintiff.

It is so ORDERED.

s/James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 26, 2005